NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0253n.06

No. 24-6086

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
May 16, 2025
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | |
|  | ) | |
|  | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
|  | ) | THE EASTERN DISTRICT OF |
| DOMINIQUE JAMAR McCANN, | ) | KENTUCKY |
| Defendant-Appellant. | ) | OPINION |
|  | ) | |

Before: McKEAGUE, MURPHY, and DAVIS, Circuit Judges.

MURPHY, Circuit Judge. Dominique McCann violated the terms of his supervised release by using cocaine and missing sessions of his substance-abuse treatment. His counsel asked the district court to send him to an inpatient drug-treatment facility as the punishment for these violations. The court instead imposed an 8-month sentence followed by the requested inpatient treatment. McCann argues that the court both improperly sentenced him to prison to help him overcome his drug addiction and wrongly suggested that he had not sought employment while on supervised release. But the court did not abuse its discretion in either fashion. We thus affirm.

I

In May 2018, a gold car refused to stop for a traffic violation and then led police officers on a high-speed chase in Lexington, Kentucky. The driver initially evaded the officers, who broke off the pursuit for safety reasons. Yet they tracked down the car a short time later. It took them

on a second high-speed chase. This time, an officer saw the car crash into another vehicle and its driver flee on foot. But the police successfully apprehended the culprit, who turned out to be McCann. The car contained a handgun, cocaine, and synthetic marijuana. McCann also possessed heroin and a large amount of money on his person. He pleaded guilty both to possessing heroin with the intent to distribute it and to possessing a firearm in furtherance of a drug-trafficking crime. *See* 21 U.S.C. § 841(a)(1); 18 U.S.C. § 924(c)(1)(A). The district court sentenced him to 80 months' imprisonment and 3 years' supervised release.

McCann started his supervised-release term in May 2024. That July, a probation officer obtained a urine sample from him that tested positive for cocaine. Although McCann denied using cocaine, he gave no "plausible reason" for how the drug ended up in his system. Rep., R.33, PageID 91. In response, McCann's probation officer suggested that he participate in substance-abuse treatment on an outpatient basis and that he test more regularly for illegal drugs. The district court approved these suggestions.

By early October, though, the probation officer determined that McCann had violated the conditions of his supervised release in several more ways. After another urine sample tested positive for cocaine, McCann admitted that he had recently used the drug. The probation officer also learned that McCann had skipped two recent sessions of his substance-abuse treatment and had failed to maintain employment. This conduct led the officer to file a violation report with the court and to call for McCann's arrest.

At a hearing, McCann admitted to using cocaine and missing treatment sessions in violation of four supervised-release conditions. The magistrate judge who conducted this hearing recommended that the district court find McCann guilty of the four violations. These violations produced a guidelines range of 8 to 14 months' imprisonment. But defense counsel asked the

2

magistrate judge to recommend a below-guidelines variance. Counsel suggested that, in lieu of additional prison time, the court should order McCann to participate in substance-abuse treatment at an *inpatient* facility because "obviously [his] client has a drug problem." Tr., R.52, PageID 151.

The magistrate judge issued a written "recommended disposition" discussing the sentencing factors in 18 U.S.C. § 3553(a). He described McCann's upbringing and lengthy substance-abuse problems and credited McCann's seemingly "sincere desire" to have another chance at supervised release. Recommended Disposition, R.41, PageID 108. Despite these mitigating factors, the magistrate judge could "find no reason to recommend a sentence below the recommended guideline range." *Id.* Among other reasons, he saw "little evidence" that McCann had "committed to seeking improvement in his life," noting that he had exerted little effort in seeking more education or keeping a job. *Id.* McCann also had a "pattern" of lawbreaking while under government supervision for past crimes. *Id.* And McCann could not comply with the most "basic" of supervised-release conditions, such as attending drug treatment. *Id.* The magistrate judge thus recommended that the court revoke his supervised release and impose an 8-month sentence.

The district court held a sentencing hearing because McCann requested to give a statement. At the outset, defense counsel objected to the recommended prison sentence, reiterating his request that the court order McCann "to enter and complete a term of inpatient treatment" for as long as the "professionals" think necessary. Sentencing Tr., R.53, PageID 160. The prosecution countered that the court should impose a prison sentence because the court had already allowed McCann to stay on supervised release once after he had tested positive for cocaine within two months of his release from prison.

Ultimately, the court found that it needed "to put [McCann] back in jail" and decided "to follow the magistrate judge's recommendation." *Id.*, PageID 163. It imposed an 8-month sentence and, in response to McCann's requests, ordered that he "be put into inpatient treatment immediately" on his release. *Id.* The court suggested that the prison time would give the probation officer "enough time to get you a bed." *Id.* It then explained its sentence in the following way:

> Number one, you're going to be in jail long enough to be sober. Number two, you'll come right out and go into treatment, and that will give you the fortification you need. Because, you know, it's really easy to just drop back into the same old habits you've developed over the years. So what we're going to try to do is a one-two punch, so to speak, to kind of keep you and help you. That is really our goal on supervised release.

*Id.*

II

District courts must impose reasonable sentences—both procedurally and substantively. *See United States v. Parrish*, 915 F.3d 1043, 1047 (6th Cir. 2019). A district court imposes a procedurally unreasonable sentence if it commits a process error (for example, if it considers an inappropriate factor or finds an inaccurate fact). *See id.* Here, McCann asserts that the district court committed two of these process errors. He argues that the court chose a prison term for an improper rehabilitation reason to help him overcome his addiction. *See United States v. Jaques*, 2025 WL 561784, at *6–8 (6th Cir. Feb. 20, 2025). And he argues that the court based his sentence on the clearly erroneous factual finding that he had not sought employment while on supervised release. *See United States v. Adams*, 873 F.3d 512, 517 (6th Cir. 2017). For full disclosure, some of our cases have treated McCann's first (rehabilitation) argument as a substantive challenge rather than a procedural one. *See United States v. Culberson*, 2025 WL 1166895, at *2 (6th Cir. Apr. 22, 2025). But he is likely correct that it qualifies as procedural for reasons we have since explained.

*See Jaques*, 2025 WL 561784, at *6–8. Regardless, the difference does not matter to the outcome because the argument would trigger the same standard of review in this case either way. *Cf. Culberson*, 2025 WL 1166895, at *2.

To be sure, McCann raised neither of his two objections in the district court. We normally treat procedural claims that a defendant fails to raise in the district court as forfeited, and thus we typically review them for plain error. *See United States v. Holt*, 116 F.4th 599, 612–13 (6th Cir. 2024). But the district court also failed to ask McCann's counsel at the end of the sentencing whether he had any final objections to the sentence. *See United States v. Vonner*, 516 F.3d 382, 385–86 (6th Cir. 2008) (en banc). Under our precedent, then, McCann forfeited neither issue by failing to object. *See United States v. Bostic*, 371 F.3d 865, 872–73 (6th Cir. 2004). We thus will review his challenges for an abuse of discretion. *See Jaques*, 2025 WL 561784, at *5–6; *Parrish*, 915 F.3d at 1047.

*Rehabilitation*. When choosing a punishment, district courts have much discretion in how they balance the sentencing factors in 18 U.S.C. § 3553(a). *See Tapia v. United States*, 564 U.S. 319, 325 (2011). But the sentencing laws limit their discretion in various ways. As relevant here, those laws explain "that imprisonment is not an appropriate means of promoting correction and rehabilitation." 18 U.S.C. § 3582(a). Courts thus may not impose or increase a prison term to help rehabilitate the defendant. *See Tapia*, 564 U.S. at 326–27. And this ban applies not just during the "initial sentencing after conviction" but also during the sentencing after the violation of a supervised-release condition. *United States v. Deen*, 706 F.3d 760, 765–66 (6th Cir. 2013). In both contexts, we will reverse a prison sentence if the district court relied on rehabilitation purposes as "the reason" for the sentence. *Id.* at 768 (citation omitted). So, for example, we found that a court erred when it picked a sentence's length based on its view about the time it would take the

defendant to "reset" (that is, overcome his addiction). *Adams*, 873 F.3d at 522–23. And we found that a court erred when it provided no "independent rationale" for its sentence other than "rehabilitative concerns." *United States v. Rucker*, 874 F.3d 485, 488 (6th Cir. 2017).

At the same time, sentencing courts need not turn a blind eye to rehabilitation. *See Tapia*, 564 U.S. at 334. Rather, they may explain the educational and treatment opportunities that the prison system makes available and encourage defendants to use these rehabilitative resources. *See id.*; *Culberson*, 2025 WL 1166895, at *3–4; *United States v. Gibson*, 2025 WL 1021554, at *4 (6th Cir. Apr. 3, 2025) (lead opinion). So, for example, we upheld a sentence when the court explained that the sentence would give the defendant "opportunities" for treatment because this statement did not express that the court had chosen the sentence for treatment purposes. *See United States v. Tolbert*, 459 F. App'x 541, 548–49 (6th Cir. 2012). Likewise, we upheld a sentence when the court explained that the sentence would give the defendant time to "get [his] life straightened out" because the phrase again suggested only that he would have opportunities to rehabilitate—not that the court had chosen the prison term based on those opportunities. *See United States v. Akridge*, 2024 WL 84097, at *4–5 (6th Cir. Jan. 8, 2024).

As these divergent cases show, a district court's statements often might leave things ambiguous. How do we tell whether the court crossed the line from merely encouraging rehabilitation (allowed) to choosing a prison sentence because of rehabilitation (prohibited)? Our caselaw provides a few datapoints. We will not reverse if the record shows only that "it is merely possible" that the court wrongly chose a sentence for rehabilitation reasons. *United States v. Krul*, 774 F.3d 371, 375 (6th Cir. 2014). Indeed, the abuse-of-discretion standard generally requires us to have a "definite and firm conviction that the district court" made a mistake. *United States v. Johns*, 65 F.4th 891, 893 (6th Cir. 2023) (citation omitted); *see Akridge*, 2024 WL 84097, at *3.

If a mere possibility exists that the court may have erred, the defendant's appellate argument would not satisfy this demanding standard of review. When evaluating whether the district court committed this type of error, we also must consider the "record as a whole" and read challenged statements in the full "context" in which they were made. *Akridge*, 2024 WL 84097, at *4; *see United States v. Frost*, 770 F. App'x 744, 745 (6th Cir. 2019).

After assessing McCann's arguments under these standards, we are not left with a "'firm conviction' that the district court" committed the *Tapia* error he alleges. *Johns*, 65 F.4th at 893 (citation omitted). McCann argues that the court relied on rehabilitation concerns to impose an 8-month prison term based on two statements: that the 8-month sentence would keep him in prison "long enough" for him to get "sober" and that this sentence would "give [the] probation office enough time to get [him] a bed" in an inpatient facility. Sentencing Tr., R.53, PageID 163. He raises reasonable points. If read out of context, these statements certainly make it "possible" that the court relied on improper rehabilitation reasons. *Krul*, 774 F.3d at 375. But that is not enough.

And for two reasons, we read the statements as explaining only the *effect* of the court's sentence—not the *purpose* behind it. *First*, the court gave (or at least incorporated) "independent" reasons for its sentence apart from any concerns with rehabilitation. *Rucker*, 874 F.3d at 488. The court started its discussion by explaining that it believed "that we need to put you back in jail" and that it would "follow the magistrate judge's recommendation." Sentencing Tr., R.53, PageID 163. The magistrate judge's recommendation also explained why the court should order a prison sentence under a full analysis of the permissible § 3553(a) factors. The magistrate judge highlighted, for example, McCann's "pattern" of violating the law while on supervised release and his failure to conform to easy-to-meet "conditions" of that release. Recommended Disposition,

R.41, PageID 108. By "follow[ing]" this recommendation, the district court provided grounds separate from rehabilitation. Sentencing Tr., R.53, PageID 163.

*Second*, the district court made the challenged statements "directly in response to [McCann's] principal argument at sentencing": that he could overcome his drug addiction only if the court placed him in an inpatient facility rather than in prison. *United States v. Duncan*, 769 F. App'x 227, 232 (6th Cir. 2019). The court had a duty to consider this argument and facilitated our appellate review by explaining "the basis for rejecting it." *Gibson*, 2025 WL 1021554, at *7 (lead opinion); *see United States v. Jones*, 489 F.3d 243, 251 (6th Cir. 2007). That is, we read the court's statements to be explaining why a prison term was proper despite McCann's request for immediate inpatient treatment: McCann could still "be sober" in a controlled prison environment and could immediately transition to inpatient treatment when he got out. Sentencing Tr., R.53, PageID 163. The court acted appropriately by discussing these "important matters" at McCann's own request. *Tapia*, 564 U.S. at 334; *see Krul*, 774 F.3d at 375.

*Employment*. McCann next argues that the district court relied on a false statement of fact to pick his sentence. The probation officer had initially listed McCann's failure to obtain a job as a distinct violation of his supervised-release conditions. But McCann objected at the hearing before the magistrate judge, claiming that he had worked at two jobs and searched for others. The prosecutor then dismissed this charge. Still, when recommending an 8-month sentence, the magistrate judge suggested that McCann had failed to seek "further education or employment with any commitment.'" Recommended Disposition, R.41, PageID 108. McCann argues that this statement was false because he had sought employment and thus that the district court should not have adopted it.

8

We disagree because McCann overreads the statement. We must defer to the district court's factual findings and so review them for clear error. *See United States v. Caston*, 851 F. App'x 557, 560 (6th Cir. 2021). Under that forgiving standard, we will uphold a finding if it rests on a "plausible" reading of the record. *United States v. O'Lear*, 90 F.4th 519, 536 (6th Cir. 2024) (citation omitted). And the court plausibly concluded that McCann had not kept or sought a job with "commitment." Recommended Disposition, R.41, PageID 108. Among other reasons, McCann admitted that he quit one job by choosing not to show up or call in. McCann also admitted at the hearing before the magistrate judge that he had not looked for work in over two weeks. The judge reasonably interpreted these statements to show a lack of commitment—all that the judge said in his recommendation.

We affirm.